THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

HARVEY J. BROMLEY                                                                                          PLAINTIFF

v.                                         Civil No. 14-2007

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Harvey J. Bromley, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background**

Plaintiff applied for DIB on May 27, 2011. (Tr. 9.) Plaintiff alleged an onset date of July 31, 2008 due to diabetes, diabetes complications, pain, insomnia. depression and anxiety. (Tr. 144.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on July 2, 2012 in front of Administrative Law ("ALJ") Clifford Shilling. Plaintiff was present to testify and was represented by counsel. The ALJ also heard testimony from Plaintiff's wife, Sally Katherine Bromley, and Vocational Expert ("VE") Larry Seifert. (Tr. 33.)

At the time of the administrative hearing, Plaintiff was 53 years old, and possessed a high school diploma and "almost two years of college." He did not complete the requirements for any Associate's degree. (Tr. 38, 122.) The Plaintiff had past relevant work experience ("PRW") as a network technician. (Tr. 25.)

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On September 27, 2012, the ALJ concluded that Plaintiff suffered from the following severe impairments: "diabetes mellitus, peripheral neuropathy and degenerative joint disease." (Tr. 15.) The ALJ found that Plaintiff maintained the residual functional capacity to perform the full range of light work. (Tr. 19.) The ALJ elicited testimony from the VE concerning Plaintiff's PRW and several hypotheticals as to work that Plainitff could now perform. (Tr. 65.) However, the ALJ utilized the Medical-Vocational Rules ("Grid") to find that Plainitff was not disabled. (Tr. 25.)

Plaintiff requested a review by the Appeals Council on October 21, 2012. (Tr. 8.) The Appeals Council denied the appeal on November 14, 2013. (Tr. 1.) Plaintiff filed this appeal on January 10, 2014. (ECF. No. 1.) Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 9, 10.)

## II.  Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and

AO72A
(Rev. 8/82)

that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion

Plaintiff raises six issues on appeal: 1) the ALJ erred by failing to fully and fairly develop the record; 2) the ALJ erred at Step Two; 3) the ALJ erred in failing to evaluate the claim under SSR 02-1p, the severity regulation and the remainder of the sequential evaluation; 4) the ALJ erred in his *Polaski* credibility analysis; 5) the ALJ erred in his RFC assessment; and 6) the ALJ erred in relying upon the Medical-Vocational Guidelines ("Grids") at Step Five. (Pl's Br. 3-20.) Because this Court has concerns about the credibility analysis and the basis of the RFC assessment, the other issues will not be addressed.

Plaintiff's diabetic peripheral neuropathy ("PN") is key to both of these concerns. "Diabetic neuropathy is the result of nerve ischemia due to microvascular disease, direct effects of hyperglycemia

3

on neurons, and intracellular metabolic changes that impair nerve function. There are multiple types. . ." http://www.merckmanuals.com/professional/endocrine_and_metabolic_disorders/ diabetes_mellitus_and_disorders_of_carbohydrate_metabolism/diabetes_mellitus_dm.html?qt=diabetic%20peripheral%20neuropathy&alt=sh. (accessed Dec. 18, 2014.)

> Symmetric polyneuropathy is most common and affects the distal feet and hands (stocking-glove distribution); it manifests as paresthesias, dysesthesias, or a painless loss of sense of touch, vibration, proprioception, or temperature. In the lower extremities, these symptoms can lead to blunted perception of foot trauma due to ill-fitting shoes and abnormal weight bearing, which can in turn lead to foot ulceration and infection or to fractures, subluxation, and dislocation or destruction of normal foot architecture (Charcot joint).

*Id.*

Plaintiff sees both Dr. Michael Cole of Sparks Family Medicine South and Melanie Sutton, DNP (Doctor of Nursing Practice) of Mercy Department of Endocrinology on a regular basis. (Tr. 332-63, 474-507, 679-93, 739-60, 761, 762-774.) Dr. Cole began treating Plaintiff in December 2007. (Tr. 495.) Dr. Cole first diagnosed Plaintiff with PN on March 26, 2010. (Tr. 354.) After that date, he consistently diagnosed PN at each of his followup appointments, typically at three month intervals. The last appointment from him appears to be May 7, 2012. He completed a "Physical Exertions Limitations Form" on June 24, 2011. (Tr. 347-48.) This was submitted to the Agency in conjunction with some of Plaintiff's medical records. (Tr. 345-363.) In this checklist form he indicated that Plaintiff was limited to "part-time work only or no substantial work: less than 10 hours per week, regardless of work restrictions." (Tr. 347.) He also submitted a brief written statement: "Mr. Bromley has physical limitations which prevent gainful employment. Specifically, he might be able to work less than 10 hours per week if there were significant work restrictions. This apparently translates into no substantial work capability at this time.". (Tr. 348.)

Plaintiff established care with the Mercy Department of Endocrinology in 1999. (Tr. 761.) The first medical notation in the record from DPN Sutton is dated February 22, 2011. (Tr. 762.) The notation for March 31, 2011 stated "No complaints of neuropathy. Patient does not have supporting diagnosis for

diabetic shoes." (Tr. 765.) This statement is repeated in June 2011 and January 2012. (Tr. 767, 771, ) On October 3, 2011 DPN Sutton noted "He has complaints of neuropathy." (Tr. 769.) On June 14, 2012, DPN Sutton noted that Plaintiff had "No *new* complaints of neuropathy. Patient *does* have supporting diagnosis for diabetic shoes." (Tr. 773.) (emphasis added.) On June 29, 2012, DPN Sutton wrote a letter stating that Plaintiff "has chronic edema and pain in is lower extremities that is related to beginning stages of diabetic peripheral neuropathy and adverse effects of the medications." (Tr. 761.) She expressly concurred with Dr. Cole's functional assessment that Plaintiff's chronic health issues would interfere with reasonable employment, but did not provide a specific function assessment. (Tr. 761.)

The ALJ found that Plaintiff's PN was a severe impairment at Step Two. (Tr. 15.)

A.  **Credibility Analysis**

In determining a claimant's RFC, "'the ALJ must first evaluate the claimant's credibility.'" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d 687, 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). In discrediting a claimant's subjective complaints, an ALJ is required to consider all available evidence on the record as a whole and is required to make an express credibility determination. *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir. 2000). However, the ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004). An ALJ's decision to discredit a claimant's credibility is entitled to deference when the ALJ provides "good reason for doing so." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001.)

5

In his credibility analysis, the ALJ placed emphasis on two points, mentioning them twice in the analysis. First, he noted that Plaintiff's two function reports and the third party function report completed by his wife demonstrated that he could perform his activities of daily living ("ADL"). Second, he noted that Dr Kralik reported that the claimant was still actively seeking work in her psychiatric CE report. (Tr. 22.) Specifically:

> According to the claimant's June 17 and November 28, 2011 Function Reports and a November 28, 2011 Third Party Function Report, the claimant lives in a house with his family. He spends his day helping to care for the dog and tending to his personal care. He prepares his own simple meals daily. He mows the yard every one to two weeks using a riding lawn mower and does the laundry once a week. The claimant also vacuums once every two weeks. He can drive a car and shops in stores, by phone, mail and computer for electronics and computer or office supplies. His hobbies include amateur ham radio, reading, target shooting, electronics and building small electronic kits. According to Dr. Kralik's report, the claimant was actively searching for a job. (Exhibits 6E, 11E, 14E and 15F). The fact that the claimant can engage in the foregoing activities indicates that his impairments do not preclude him from all work related activities.

(Tr. 22.) Later in the opinion, the ALJ granted little probative evidence to Plaintiff's testimony in part because he was able to engage in ADLs and "search for and apply for jobs." (Tr. 24.) "the claimant is able to perform his activities of daily living, which is hindered only by his lack of motivation." (Tr. 22.) He also noted that Dr. Kralik, psychiatric CE, noted that "claimant was actively searching for a job." (Tr. 22.)

While ADL-competency and job-seeking are accepted reasons for discrediting a claimant in the Eighth Circuit, in this case the ALJ's reliance on these points is troubling for two reasons. First, both the function reports and Dr. Kralik's CE were completed in 2011 and predate Plaintiff's dual diagnosis of PN by two treating medical professionals. While Plaintiff's medical records show mixed notations from DPN Sutton regarding his recurring diabetic PN prior to February 2012, the medical visit records after that from both Dr. Cole and DPN Sutton both agree that Plaintiff has PN. Further, DPN Sutton expressly stated that he had beginning PN in her letter. This statement was congruent with her examination notations earlier that month. Thus, both the function reports and Dr. Kralik's comments about his job searching predate this diagnosis of PN by two treating medical professionals and may therefore no longer be applicable. At

6

the very least further inquiry is required to confirm the continued applicability of this information before using it to discredit Plaintiff's subjective allegations. *See Draper v. Barnhart,* 425 F.3d 1127, 1130 (8th Cir. 2005) ("inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand").

Second, in his discussion of the medical evidence, the ALJ failed to note DPN Sutton's notation in June 2012 that Plaintiff had PN and needed diabetic shoes. Instead he simply stated that DPN Sutton found that "the claimant's diabetes mellitus was stable and improved." (Tr. 21.) Therefore it is not clear that the ALJ saw or considered this information. *See Reader v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (The ALJ is "not free to ignore medical evidence.").

On remand, the ALJ is directed to complete a fresh credibility analysis utilizing up-to-date, accurate, and complete information from the medical record.

### B. RFC Assessment

Plaintiff's PN diagnosis by two treating medical professionals also raises concerns as to the accuracy of the RFC Assessment.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).

Although the ALJ is responsible for determining claimant's Overall RFC, the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700,

704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace.""An administrative law judge may not draw upon his own inferences from medical reports."*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.) Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). Further, VE "[t]estimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir.1991) (citing *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994)).

In this case, the ALJ recognized Plaintiff's PN as a serious impairment at Step Two. However, he dismissed the function report from treating physician Dr. Cole and the letter from DPN Sutton. Thus, the only Physical RFC in the record is from nonexamining Agency physician Dr. David Hicks. There are two concerns with the ALJ's reliance on this document. First, it was completed on September 2, 2011 and predates Plaintiff's dual diagnosis of PN by treating medical professionals. Second, it does not include diabetic PN as a diagnosis to be included in the assessment, despite the fact that PN was first diagnosed by treating primary physician Dr. Cole in March 2010. The Agency's own policy interpretation acknowledges that PN is "permanent nerve damage" and that " adults with peripheral sensory neuropathy may have difficulty walking, operating foot controls, or manipulating objects because they have lost the ability to sense objects with their hands or feet." SSR 14-2p. Thus, the Physical RFC relied upon by the ALJ does not appear to accurately reflect Plaintiff's medical evidence. *See Draper,* 425 F.3d at 1130 ("inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand").

AO72A
(Rev. 8/82)

Additionally, it is not clear that the ALJ's reasons for dismissing the RFC from Dr. Cole and the letter from DPN Sutton[2] are based on an accurate representation of the record. Specifically, the ALJ dismissed Dr. Cole's function checklist and DPN Sutton's letter because they were not supported by, and did not make reference to, objective medical evidence. Regarding DPN Sutton's letter he stated that, in terms of objective medical evidence, "there was none to be found in the record." (Tr. 23.) The ALJ did not indicate exactly what objective evidence might be lacking. Nor can this Court discern an obvious lack, given that Dr. Cole's checklist was submitted in conjunction with several examination records, and given the overall number of examination records from both medical professionals in the record. Thus, a remand is necessary in order for the ALJ to explain exactly what necessary objective medical evidence was missing from Dr. Cole and DPN Sutton's records. *See e.g. Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001) (The ALJ must give good reasons for whatever weight he gives the treating physician's opinion.)

On remand, the ALJ is directed to order a new Physical RFC, preferably from a treating or examining physician. This RFC must accurately reflect Plaintiff's physical impairments, and must explicitly address Plaintiff's ability to function in the workplace. It must address each of the key issues for functional limitations, including exertional, postural, manipulative, visual, communicative, environmental and any other applicable limitations. The ALJ must also expressly provide good reasons for dismissing any treating medical professional opinions.

### IV. Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

---

[2] The ALJ did state that, pursuant to SSR 06-03p, DPN Sutton's opinion would be considered even though she is not an MD.

DATED this 19th day of December 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE